IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIETTA VASSER,

                Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commission of the Social Security
Administration,

                Defendant.

OPINION and ORDER

21-cv-355-jdp

---

Plaintiff Brietta Vasser seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that Vasser was not disabled within the meaning of the Social Security Act. Vasser contends that administrative law judge (ALJ) Joseph D. Jacobsen erred by mishandling the opinion evidence, improperly discrediting her subjective complaints, and failing to adequately consider her obesity.[1]

The court concludes that the ALJ erred by discrediting favorable medical opinions and Vasser's subjective complaints on the ground of inconsistency without explaining his conclusion or considering evidence that undermined his conclusion. The court will remand the case for reconsideration of those issues.

---

[1] Vasser also contends that the ALJ's decision was invalid under *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). But this court has rejected that argument multiple times. S*ee Kreibich v. Kijakazi*, No. 20-cv-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022) (collecting cases). And Vasser cites no contrary authority from the Seventh Circuit or anywhere else, so it isn't necessary to consider that issue again.

BACKGROUND

Vasser applied for disability insurance benefits, alleging disability beginning in March 2014. R. 856.[2] She has been denied benefits at the administrative level twice, and this is her second appeal to this court. After she filed her first appeal, the commissioner stipulated to a remand before briefing so that the ALJ could reevaluate the medical opinion evidence and Vasser's subjective symptoms, among other things. *See Vasser v. Saul*, No. 19-cv-781-slc (W.D. Wis. Jan. 20, 2021).

On remand, the ALJ found in a January 2021 decision that Vasser suffered from several severe impairments: fibromyalgia, asthma, anxiety disorder, affective disorder, and obesity. R. 856. Based on these impairments, the ALJ found that Vasser had the RFC (residual functional capacity) to perform light work, with additional physical and mental restrictions, including the following:

- she can engage in frequent, not constant, rotation/flexion/extension of the neck;

- she must avoid moderate exposure to extreme heat, cold, and pulmonary irritants, such as fumes, odors, dusts, and gases;

- she can understand and carry out at least simple instructions in a low stress job (defined as one with only occasional decision making, a regular set of job tasks, and few changes in duties and work settings);

- she cannot do piece work or fast-moving assembly line-type work; and

- she cannot have interaction with the public or more than occasional interaction with co-workers and supervisors (after a brief training period).

R. 859.

---

[2] Record cites are to the administrative transcript located at Dkt. 14.

Based on the testimony of a vocational expert, the ALJ found that Vasser was not disabled because she could perform jobs that are available in significant numbers in the national economy, such as sorter, assembler, and inspector. R. 869. The Appeals Council declined review. R. 929–354.

Vasser now appeals to this court again. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

Vasser contends that the ALJ erred in several ways, but a central theme is that the ALJ rejected favorable medical opinions and Vasser's own statements based on alleged inconsistencies without adequately explaining how the two things at issue were inconsistent. Inconsistencies are valid reasons for declining to credit an opinion or a statement, but the ALJ must articulate his or her reasoning for finding an inconsistency with enough specificity to allow meaningful review. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). The court agrees with Vasser that the ALJ failed to do that here.

3

The court will begin with the ALJ's handling of Vasser's subjective symptoms. The ALJ summarized Vasser's statements during the administrative hearings in 2018 and 2021 as follows:

> She testified that she had difficulty being around others, difficulty concentrating, and difficulties leaving her home. The claimant asserted that she experienced pain almost every day with the pain in her neck and back being the worst. She testified that she her joints all over her body hurt. The claimant asserted that the pain in her neck makes looking up and down difficult and that remaining static is painful. She testified that she experiences pain in her hip if she overexerts herself. The claimant testified that she could stand for 30 minutes and walk for 2 blocks or about 10 minutes. She asserted that she experiences side effects from her medication, including lack of concentration, insomnia, restlessness, and memory loss. She testified that she experiences shortness of breath due to her asthma, which could be triggered by odors and extreme temperatures.
>
> . . .
>
> She asserted that she underwent placement of a pacemaker, which has not really helped her physically. The claimant testified that it is hard to walk very far and that she needs to take breaks when cleaning the house. She asserted that her pain has remained constant. She testified that when she leaves the house she experiences nausea, dizzy spells, heart races, fear, and crying spells. The claimant asserted that she is regularly late for appointments due to her condition. She testified that she needed to take breaks in order to calm down. The claimant asserted that she had difficulty working around fumes, dusts, and extreme temperatures.

R. 860.

In several parts of the decision, the ALJ found that Vasser's testimony was inconsistent with the record. One notable example relates to Vasser's statement that she has difficulty handling stress or adapting to changes. The ALJ said that was inconsistent with observations of treatment providers that Vasser was "appropriately dressed." R. 858. That's a nonsequitur.

The ALJ didn't explain how an ability to dress oneself has any relationship to an ability to deal with stress, and the court cannot discern any relationship.

There are several other examples in which the ALJ noted perceived inconsistencies between Vasser's statements and the record, but he didn't explain how the two things were inconsistent, or he failed to acknowledge important facts that undermined his conclusion:

- In response to Vasser's statements that she had problems getting along with others, the ALJ wrote that treatment providers observed that "she regularly demonstrated a positive mood" and that she lived with her boyfriend. R. 858, 863. The ALJ didn't explain how being in a good mood correlates with an ability to get along with others, and he ignored Vasser's statements that she was "overwhelmed" by her boyfriend's emotional and verbal abuse, that she has thoughts of cutting herself after arguments with him, and that she was "unable to get away from him." R. 1438, 1450–51.

- The ALJ wrote that Vasser's subjective complaints were inconsistent with preparing simple meals, cleaning, shopping online, driving a car, and going to the beach, but he didn't explain how any of those basic tasks undermined Vasser's credibility about what she can and can't do. R. 863. The commissioner doesn't explain either.

- The ALJ wrote that Vasser's reports of suicidal ideation and a documented episode of self-harm were undermined by observations of treatment providers that Vasser's judgment and insight were intact. R. 864. Again, the ALJ didn't explain how the treatment providers' observations undermined Vasser's statements.

- The ALJ wrote that Vasser is "better functioning than one would expect given her allegations of disabling symptoms," and he cited as examples activities such as managing money and caring for her son. R. 864. But the ALJ didn't acknowledge that Vasser had been homeless multiple times during the relevant period and that she had to put her son in foster care or place him with family. R. 322 (homeless in November 2015); R. 1115 (homeless in May 2019); R. 1142 (homeless in February 2020); R. 1427 (son in foster care in May 2020); R.1464 (family taking care of son in September 2019); R. 1450 (son in foster care in February 2020); R. 1470 (homeless in July 2019).

The ALJ followed a similar pattern in evaluating the opinions of Vasser's treating physician of six years, Carrie Torgersen, and her treating therapist, Krista DeMuth. Torgersen

offered an opinion in 2020 that Vasser can: lift no more than 20 pounds occasionally and no weight frequently; stand or walk for no more than two hours per day; occasionally reach overhead bilaterally; occasionally look down; occasionally look up; occasionally twist and stoop; frequently hold her head static and turn her head right or left; rarely crouch and climb stairs; never climb ladders; frequently handle and finger bilaterally. R. 1985.[3]

DeMuth offered an opinion that Vasser had marked difficulties with social functioning and moderate deficiencies of concentration. R. 1991–95. DeMuth also found that Vasser would suffer from repeated episodes of deterioration, would miss two days of work a month, and couldn't work more than four to five hours a day because of her mental limitations. *Id.*

The ALJ gave little weight to both opinions, contending that they were internally inconsistent and inconsistent with the record in the following ways:

- Torgersen's opinion that Vasser can't lift any weight frequently is inconsistent with treatment notes indicating that she has full range of motion. R. 865.

- Torgersen's opinion that Vasser can't stand or walk for more than two hours is inconsistent with treatment notes showing a normal or steady gait. *Id.*

- DeMuth's opinion that Vasser will have repeated episodes of deterioration isn't consistent with DeMuth's opinion that Vasser can sustain an ordinary routine and perform at a consistent pace. R. 867.

- DeMuth's opinion that Vasser has marked limitations in "interacting with others" is inconsistent with her opinion that Vasser has a fair ability to interact with the general public. *Id.*

The ALJ didn't explain his reasoning behind any of these alleged inconsistencies, and it isn't clear whether there were any inconsistences. An ability to move isn't necessarily inconsistent with an inability to lift things, an ability to walk normally for a short distance isn't

---

[3] Torgersen also offered an opinion in 2016, R. 571–73, but Vasser doesn't challenge the ALJ's handling of that opinion, so the court won't consider the commissioner's arguments about it.

necessarily inconsistent with an inability to walk for a long time, and an ability to maintain concentration and pace under ordinary circumstances isn't necessarily inconsistent with episodes of decompensation during stressful situations. The court of appeals has repeatedly observed that mental health symptoms often wax and wane. *See Mandrell v. Kijakazi*, 25 F.4th 514, 519 (7th Cir. 2022) ("The fact that she had some good days and some bad days, as we have noted in other cases, in no way undermines her showing of disability.").

At first look, an opinion that Vasser has marked limitations in "interacting with others" may seem inconsistent with an opinion that Vasser has a fair ability to interact with the public. But a closer inspection of Vasser's report reveals that there is no inconsistency. DeMuth's opinion was that Vasser has marked limitations in "maintaining social functioning" (not "interacting with others"), which was one of four broad categories of functional limitations. R. 1993. The possible degrees of limitation were "none," "slight," "moderate," "marked," and "extreme." *Id.* Demuth's report defines "marked" to mean that the "degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively." *Id.* In a different section of the report, DeMuth ranked Vasser's "mental abilities and aptitude needed to work," including her ability to interact with the public, and the options were "unlimited to very good," "good," "fair," and "poor or none." R. 1994. "Marked" was not an option, and the report defined "fair" to mean that the ability to function in the area is "seriously limited," *id.*, which is consistent with the definition of "marked." But even if the "marked" ranking is more limiting than "fair," DeMuth ranked Vasser's ability to "[w]ork in coordination with or proximity to others without being unduly distracted" as "poor or none," which could explain a more limiting finding for the more general category of social functioning. The ALJ didn't acknowledge any of these nuances in the opinion.

7

The ALJ pointed to another alleged inconsistency between DeMuth's opinion and the record, but it isn't clear what that inconsistency is because the relevant portion of the ALJ's decision on this point stops midsentence. Specifically, the ALJ wrote: "[T]he conclusion the claimant has marked limitations interacting with others is not consistent with the overall record, which shows she regularly presented to her providers with." R. 867. Although the sentence ends at the word "with," it's likely that the ALJ meant to finish the sentence with the phrase "positive mood." As already noted, that is what the ALJ relied on to discredit Vasser's own statements that she had difficulty getting along with others. R. 858, 863. And the ALJ cited the same record evidence in that context as he did after the sentence that ends in "with." *Compare* R. 867 *with* R. 858, 863. If "positive mood" is what the ALJ meant to write, it suffers from the same problem as the other references to "positive mood" because the ALJ didn't explain how Vasser's mood showed that she could get along with others.

The bottom line is that the ALJ is required to draw a logical bridge between the evidence and his conclusions. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013), and he may not disregard contrary evidence, *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). In this case, much of the evidence cited by the ALJ didn't support his conclusions, which compels a conclusion that the decision isn't supported by substantial evidence. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (remanding because "the primary piece of evidence that [the ALJ] relied on does not support the propositions for which it is cited"). A remand is required to allow the ALJ to reconsider the opinion evidence and Vasser's subjective complaints.

Vasser also challenges the ALJ's decision on the grounds that he relied on outdated medical opinions of state-agency consultants, and he failed to adequately consider Vasser's

obesity. [4] The medical opinions are indeed dated—as much as six years old at the time of the most recent administrative hearing. But Vasser doesn't cite any authority for the view that the age of the opinion alone is enough to require new opinions. Rather, the plaintiff must point to significant new evidence that "reasonably could have changed the reviewing physician's opinion." *See Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). In this case, Vasser cites new evidence, but she doesn't explain why it would have changed any of the consultants' opinions. Her argument on obesity fails because she doesn't identify evidence that the ALJ overlooked regarding her obesity or that requires greater restrictions than what the ALJ found. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (rejecting argument that ALJ's failure to consider obesity required reversal when the plaintiff "does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk"). But even if new medical opinions aren't legally required under the circumstances, the ALJ may wish to consider obtaining new opinions on remand because so much time has elapsed since the consultants first issued those opinions.

---

[4] Vasser includes two sentences in her opening brief contending that the ALJ provided inconsistent restrictions in the RFC. Dkt. 17, at 14. But she doesn't explain why the restrictions are inconsistent, she cites no authority to support her view, and she doesn't respond in her reply brief to the commissioner's explanation of why the limitations are consistent. Dkt. 19, at 10.  So the court concludes that Vasser forfeited this argument.

ORDER

IT IS ORDERED that that the decision denying Brietta Vasser's application for disability insurance benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered September 8, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge